JERRY LARA, Appellant, v. THE STATE OF NEVADA,
Respondent.

No. 40268

April 14, 2004                                    87 P.3d 528

*Hinds & Morey* and *Christina A. Hinds,* Las Vegas, for
Appellant.

*Brian Sandoval,* Attorney General, Carson City; *David J. Roger,*
District Attorney, and *James Tufteland,* Chief Deputy District
Attorney, Clark County, for Respondent.

Before SHEARING, C. J., ROSE and MAUPIN, JJ.

## OPINION

By the Court, MAUPIN, J.:

Appellant Jerry Lara appeals from a district court order denying his post-conviction petition for a writ of habeas corpus.[1] He contends on appeal that the district court erred in rejecting his claims of ineffective assistance by trial and appellate counsel. We affirm.

### FACTS AND PROCEDURAL HISTORY

On April 10, 1997, the State charged Lara with murder with the use of a deadly weapon (open murder) and discharging a firearm at or into a vehicle. The State alleged that on October 26, 1996, Lara shot several times at the rear of Eduardo Sonera's 1976 Cadillac and that one of the bullets hit and killed a child passenger, Alex Arroyo. Much of the evidence at trial centered on the State's theories that the shooting, and the witnesses' reluctance to give accurate accounts of it, were related to Lara's alleged membership in a neighborhood criminal organization known as the "18th Street Gang." In particular, two of the several eyewitnesses gave inconsistent statements concerning the assailant's identity for fear of retaliation by Lara or his associates.

The jury found Lara guilty on both charges. Lara filed a motion for a new trial, which the district court denied. The court sentenced Lara to life with the possibility of parole after a minimum of 20 years on the murder conviction, with an equal and consecutive sentence for the deadly weapon enhancement; and 16 to 72 months on the discharge of a firearm conviction, which the court imposed concurrently with the sentence on the murder charge. The district court also ordered Lara to pay $3,843.55 as restitution and

---

[1]See NRS 34.575(1).

gave him credit for 353 days of time served in local custody. We dismissed Lara's direct appeal.[2]

Lara, through appointed counsel, filed a post-conviction petition for a writ of habeas corpus, claiming prosecutorial misconduct at trial, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel. The district court properly denied the prosecutorial misconduct claim on procedural grounds.[3] The district court then conducted an evidentiary hearing during which it heard testimony from Lara's trial and appellate counsel. It thereafter denied the petition.

Lara now appeals the post-conviction order, arguing that the district court erred by rejecting his claims that trial counsel was ineffective for failing to properly object to evidence of, and examine the State's witnesses concerning, Lara's gang relationships; failing to properly object to or address evidence that witnesses gave inaccurate information for fear of retaliation; presenting gang-related evidence as part of the defense's case; giving inadequate advice as to whether Lara should testify; and failing to properly examine Lara during the defense's case-in-chief. Lara also attacks the district court's rejection of his claim that appellate counsel provided ineffective assistance by failing to raise claims of error in connection with the admission at trial of gang-membership and fear-of-retaliation evidence. As noted, we disagree and affirm the district court's order denying Lara's petition.

## DISCUSSION

### 1. Ineffective assistance of trial counsel

"The question of whether a [criminal] defendant has received ineffective assistance of counsel at trial in violation of the Sixth Amendment is a mixed question of law and fact and is thus subject to independent [appellate] review."[4] However, the district court's purely factual findings regarding a claim of ineffective assistance of counsel are entitled to deference on subsequent review by this court.[5]

We review claims of ineffective assistance of trial counsel under *Strickland v. Washington*.[6] Under *Strickland,* to prevail on a claim

[2]*Lara v. State,* Docket No. 31651 (Order Dismissing Appeal, April 26, 2000).

[3]This claim should have been raised on direct appeal. *See* NRS 34.810(1)(b). We have discussed the prosecutorial misconduct issue *infra* only to the extent necessary to resolve Lara's claim of ineffective assistance of appellate counsel.

[4]*State v. Love,* 109 Nev. 1136, 1138, 865 P.2d 322, 323 (1993).

[5]*Riley v. State,* 110 Nev. 638, 647, 878 P.2d 272, 278 (1994).

[6]466 U.S. 668, 686-87 (1984); *see also Kirksey v. State,* 112 Nev. 980, 987, 923 P.2d 1102, 1107 (1996).

of ineffective assistance of trial counsel, a defendant must establish two elements: (1) that counsel provided deficient performance, and (2) "that the deficient performance prejudiced the defense."[7] Establishment of deficient performance requires a showing that counsel's performance fell below an objective standard of reasonableness.[8] To satisfy the second element, a defendant must demonstrate prejudice by showing "a reasonable probability that, but for counsel's errors, the result of the trial would have been different."[9] In addition, trial counsel's strategic or tactical decisions will be " 'virtually unchallengeable absent extraordinary circumstances.' "[10] An insufficient showing on either prong eliminates the necessity of appellate consideration of the other.[11]

### A. Gang-affiliation evidence

Lara contends that his trial attorney provided ineffective assistance by (1) failing to object to gang-affiliation evidence, (2) inadequately cross-examining the State's witnesses, and (3) calling defense witnesses that revealed Lara was in a gang. The State responds that the gang-affiliation evidence was directly relevant to establish a motive for the killing and to evaluate the credibility of witnesses offered by both the prosecution and defense. We agree with the State.

Gang-affiliation evidence may be relevant and not substantially outweighed by unfair prejudice when it tends to prove motive.[12] Additionally, the United States Supreme Court held in *United States v. Abel* that evidence showing the membership of a defendant and a defense witness in a prison gang "is certainly probative of bias."[13]

Here, the State properly offered evidence of Lara's gang affiliation to demonstrate a motive for the shooting and to explain the bias or fear of several witnesses. In particular, the State presented the testimony of Angel Arroyo and Jonathan Episioco identifying Lara as the assailant and, as discussed below, stating their reasons for previously giving inconsistent statements to police concerning

---

[7]*Kirksey,* 112 Nev. at 987, 923 P.2d at 1107.

[8]*Id.*

[9]*Id.* at 988, 923 P.2d at 1107.

[10]*Doleman v. State,* 112 Nev. 843, 848, 921 P.2d 278, 280 (1996) (quoting *Howard v. State,* 106 Nev. 713, 722, 800 P.2d 175, 180 (1990)).

[11]*Kirksey,* 112 Nev. at 987, 923 P.2d at 1107.

[12]*Lay v. State,* 110 Nev. 1189, 1195-96, 886 P.2d 448, 452 (1994); *see also* NRS 48.045(2).

[13]469 U.S. 45, 52 (1984).

the shooter's identity, to wit: fear of retaliation from Lara's gang associates. Additionally, the State asked defense witnesses gang-related questions in an effort to impeach them through bias because they were in the same gang as Lara.

On cross-examination, defense counsel impeached State witnesses based upon inconsistent statements they made to police during the investigation. During the defense case, trial counsel also called Mark Rodriguez and Jesus Cisneros as witnesses. Rodriguez, a former 18th Street Gang member and a friend of Lara's, testified that Lara was at his apartment at the time of the shooting. Counsel used this testimony in an attempt to aid Lara's alibi defense. Cisneros, also an 18th Street Gang member, testified that he was involved in a fight with Angel Arroyo following Alex Arroyo's death and that Angel Arroyo accused Cisneros of the killing. Defense counsel thus used Cisneros' testimony to contradict Angel Arroyo's statements to police and his testimony that Lara shot Alex. This approach, of necessity, revealed Lara's gang membership.

During the post-conviction evidentiary hearing, the district court heard testimony from Lara's trial counsel. Trial counsel testified that, as a tactical matter, he questioned the jury pool regarding gang-related issues because the jury would be aware of Lara's gang affiliation based upon Lara's tattoos and the nature of the State's case. Accordingly, counsel thought it necessary to screen the prospective jury panel concerning their views on gangs. Trial counsel also testified as to his exploitation of inconsistencies and deficiencies in the State's evidence and his belief that he had to directly address the gang-related issues.

Lara claims that his trial counsel should have objected to any attempt by the State to introduce gang-related evidence and should have avoided introduction of direct evidence of Lara's association with the 18th Street Gang through other members or by calling Lara to testify. More particularly, Lara argues that his trial counsel should have developed Lara's alibi defense and claims of misidentification through non-gang witnesses. We disagree.

A review of the record below confirms that gang-related evidence was probative to the State's case on the issue of motive, *i.e.,* turf protection, and to explain why certain eyewitnesses gave inconsistent statements concerning the shooting. Trial counsel's decisions relative to jury selection, the examination of the State's witnesses and the presentation of gang and non-gang defense witnesses were all part of a reasonable and sound trial strategy to fully develop the defenses that (1) Lara was misidentified as the assailant, (2) the victim's brother accused a third party of the shoot-

ing, and (3) Lara was elsewhere when the shooting occurred. It was reasonable for counsel to conclude that the claimed alibi and the accusation of a fellow gang member by one of the witnesses were critical to Lara's defense, despite the risk that the jury would hear about Lara's gang involvement.

We hold that trial counsel provided effective assistance of counsel. The State properly developed the gang-related issues, and the defense could not reasonably defend the case without directing some attention to Lara's gang affiliation. Accordingly, Lara fails to satisfy the first prong of the two-part *Strickland* test.

We also hold that Lara failed to satisfy the prejudice prong of *Strickland*. In this, we defer to the finding of the district court: "[E]ven if trial counsel made some strategic errors, [Lara] was not prejudiced because of compelling evidence of his guilt including his identification by four eyewitnesses, two of whom were neutral to the parties involved in the incident."

### B.  Advising Lara to testify

Lara additionally contends that his trial counsel rendered ineffective assistance by advising Lara to testify and by failing to question Lara on direct examination regarding his gang affiliation, both of which he claims led to a devastating cross-examination by the State.

The United States Supreme Court has recognized that an accused has the ultimate authority to make certain fundamental decisions regarding the case, including the decision to testify.[14] The record below confirms that counsel properly advised Lara of his right to testify or not testify. The district court canvassed Lara before he took the stand, and Lara stated that he understood his rights. We conclude that the decision to testify at trial was Lara's and that counsel's advice concerning the decision was not deficient. Also, given the nature of the State's case, the fact that Lara would have to testify concerning the allegations of his gang affiliations and the relevance or lack of relevance of them in the event he chose to take the witness stand does not undermine the effectiveness of his counsel in rendering advice concerning the decision to testify. It was certainly reasonable to directly address all of the gang-related issues and to advise Lara that his best course was to testify.

In light of the evidence against Lara and the fact that his gang affiliation was at issue, counsel's approach to the direct examination of his client cannot provide grounds for post-conviction relief.

[14]*Jones v. Barnes,* 463 U.S. 745, 751 (1983).

In this, we cannot hold that, but for counsel's failure to diffuse Lara's gang affiliation on direct examination, the outcome at trial would have been different.

### C. Fear-of-retaliation evidence

Lara contends that trial counsel provided ineffective assistance by failing to object to the introduction of evidence that certain of the State's witnesses made inconsistent statements to police investigators out of fear of retaliation. We disagree and conclude that counsel's decisions concerning this evidence involved sound strategy, which permitted counsel wide latitude in impeaching the witnesses with the inconsistent statements.

The State presented the fear-of-retaliation evidence based on *Lay v. State*.[15] In that case, we held that fright or general concern for one's safety could provide an explanation to the jury as to why a witness made prior inconsistent statements.

As noted, during the State's case-in-chief, Angel Arroyo and Jonathan Episioco testified that they provided inconsistent statements during the police investigation because they feared retaliation by Lara or other 18th Street Gang members. Trial counsel objected to some of this testimony but vigorously impeached these witnesses based upon later statements that they were not afraid of Lara.

We hold that the district court properly admitted the fear-of-retaliation evidence; accordingly, any failure to object could not constitute ineffective representation. Further, trial counsel utilized tactical and strategic approaches during direct and cross-examination of trial witnesses in an effort to undermine the State's evidence. Finally, as noted, Arroyo, Episioco and two neighbors identified Lara as the shooter. Thus, Lara satisfies neither prong of *Strickland*.

### 2. Ineffective assistance of appellate counsel

Lara argues that appellate counsel provided ineffective assistance on direct appeal by failing to argue that the prosecutor committed misconduct through the introduction of evidence of Lara's gang membership and the fear-of-retaliation evidence, and by failing to argue that the district court should have screened the gang-related evidence in a *Petrocelli* hearing. We disagree.

''The constitutional right to effective assistance of counsel extends to a direct appeal.''[16] This court reviews a claim of ineffec-

---

[15]110 Nev. at 1193-94, 886 P.2d at 450-51.

[16]*Kirksey,* 112 Nev. at 998, 923 P.2d at 1113.

tive assistance of appellate counsel under the *Strickland* test.[17] "To establish prejudice based on the deficient assistance of appellate counsel, the defendant must show that the omitted issue would have a reasonable probability of success on appeal."[18]

Appellate counsel testified at the post-conviction evidentiary hearing to having prosecuted in excess of 100 criminal appeals and, upon a full assessment of the case, chose to focus on the district court's denial of Lara's motion for a new trial. For tactical reasons, he rejected raising the gang-affiliation and fear-of-retaliation issues on appeal.

Appellate counsel is not required to raise every non-frivolous or meritless issue to provide effective assistance.[19] Additionally, appellate counsel's failure to raise these types of issues is not ineffective assistance of counsel.[20] Here, because the district court properly admitted all of the gang-related evidence, any appellate arguments concerning those issues, including that a *Petrocelli* hearing was required, would have been unavailing.[21] We hold that counsel utilized sound appellate strategy in attacking the issue on appeal that he felt had the highest probability of success. Therefore, the decision to restrict the scope of the appeal to issues arising from the denial of a new trial provided Lara with effective assistance of counsel at that stage of the proceedings.

## CONCLUSION

Lara's post-conviction counsel vigorously attacks the performance of both trial and appellate counsel and has at least implied that the Nevada judicial system treats the post-conviction process as a formality. While we appreciate the intensity with which post-conviction counsel has pressed this case, reasonable minds can most certainly differ on how a defendant in a criminal prosecution

---

[17]*Id.*

[18]*Id.* at 998, 923 P.2d at 1114.

[19]*Id.* at 998, 923 P.2d at 1113.

[20]*Id.* at 998, 923 P.2d at 1114.

[21]*See Qualls v. State,* 114 Nev. 900, 961 P.2d 765 (1998); *Tinch v. State,* 113 Nev. 1170, 946 P.2d 1061 (1997). To the extent that Lara challenges the district court's failure to conduct a *Petrocelli* hearing, that claim should have been raised on direct appeal. *See* NRS 34.810(1)(b). We address the failure to conduct a *Petrocelli* hearing only to the extent necessary to resolve Lara's claim that appellate counsel provided ineffective assistance by failing to raise the issue on direct appeal. *See Kirksey,* 112 Nev. at 998, 923 P.2d at 1114 (explaining that in determining whether a defendant has established prejudice based on deficient assistance of appellate counsel, "a court must review the merits of the omitted claim").

should be defended.[22] Trial and appellate counsel in this matter were faced with a myriad of critical strategic and tactical dilemmas. We hold that the district court correctly denied Lara's post-conviction petition for habeas corpus relief because his attorneys provided effective assistance at all stages of the trial and on appeal. We therefore affirm the judgment of the district court.

SHEARING, C. J., and ROSE, J., concur.

[22]*See Strickland,* 466 U.S. at 689 (''Even the best criminal defense attorneys would not defend a particular client in the same way.'').